**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-1153-WJM-KMT

JASON BROCKMAN, as trustee of the Mendy Brockman Disability Trust, and
MENDY BROCKMAN, individually,

      Plaintiffs,

v.

KIM BIMESTEFER, individually and in her official capacity as Executive Director of the
Colorado Department of Health Care Policy & Financing,
TOM MASSEY, individually and in his official capacity as the Deputy Executive Director
and Chief Operating Officer of the Policy, Communications, and Administration Office of
the Colorado Department of Health Care Policy & Financing,
DAVID L. SMITH, individually and in his official capacity as Manager of Benefits
Coordination Section for the Colorado Department of Health Care Policy & Financing,
and
ASHLEY DiRIENZO, individually and in her official capacity as Recovery Officer for the
Colorado Department of Health Care Policy & Financing,

      Defendants.

---

**ORDER TO SHOW CAUSE WHY THIS CASE SHOULD NOT BE DISMISSED FOR
LACK OF SUBJECT MATTER JURISDICTION**

---

Jason Brockman ("Mr. Brockman") and his wife Mendy Brockman ("Mrs.

Brockman") (jointly, the "Brockmans") sue various employees of the Colorado

Department of Health Care Policy and Financing ("Department"), alleging that federal

law prohibits the Department's efforts to recover Medicaid funds spent on

Mrs. Brockman's behalf.  (*See* ECF No. 39-4 (Second Amended Complaint).)  The

Brockmans seek declaratory and injunctive relief only.  (*See id.* at 28–30.)

The Department has moved to dismiss.  (ECF No. 49.)  The motion and

associated briefing go directly to the question of whether federal law prohibits the

recovery that the Department is demanding from the Brockmans.  As the Court has evaluated those arguments, however, it has come to the Court's attention that circumstances unique to this case may make the federal question unripe—meaning that the parties may be unwittingly asking this Court to give an advisory opinion, which this Court has no power to give.  The Court therefore orders the parties to show cause why this action should not be dismissed without prejudice for lack of subject matter jurisdiction.

## I.  LEGAL STANDARD

Article III of the U.S. Constitution restricts federal courts to deciding "Cases" and "Controversies."  *See* U.S. const. art. III, § 2, cl. 1.  These words have been interpreted to restrict federal courts from giving "advisory opinions," *Flast v. Cohen*, 392 U.S. 83, 96 (1968), meaning that a federal court may not resolve questions in the abstract, but instead may only resolve "disputes arising out of specific facts when the resolution of the dispute will have practical consequences to the conduct of the parties," *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011).  Moreover, "Article III standing is jurisdictional; thus, where the record reveals a colorable [jurisdictional] issue, [federal courts] have a duty to undertake an independent examination (*sua sponte* if necessary) of that issue."  *In re Peeples*, 880 F.3d 1207, 1212 (10th Cir. 2018) (internal quotation marks omitted).

If Article III jurisdiction exists, the case must also fall within Congress's statutory grant of jurisdiction to the federal courts.  The two most common bases are so-called "federal question jurisdiction," *see* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of

the United States"), and "diversity jurisdiction," *see id.* § 1332(a)(1) ("The district courts

shall have original jurisdiction of all civil actions where the matter in controversy

exceeds the sum or value of $75,000, exclusive of interest and costs, and is between

* * * citizens of different States").

## II. STATUTORY & REGULATORY BACKGROUND

Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*, establishes the

Medicaid program.  Medicaid is a federal-state partnership.  "[A state's] decision to

participate in the Medicaid program is voluntary, but participating states are thereby

obligated to comply with [Title XIX] and [its implementing] regulations . . . ."  *Kan. Health*

*Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1538 (10th Cir.

1994).  Colorado participates, and the Department administers Colorado's Medicaid

program pursuant to various statutes and regulations.  *See, e.g.*, Colo. Rev. Stat.

§§ 25.5-4-101 *et seq.*; 10 Colo. Code Regs. § 2505-10.

Title XIX requires that participating states take into account certain income and

assets when determining whether a Medicaid applicant is eligible for the program.  *See*

42 U.S.C. § 1396a(a)(18) ("A State plan for medical assistance must * * * comply with

the provisions of section 1396p of this title with respect to liens, adjustments and

recoveries of medical assistance correctly paid, transfers of assets, and treatment of

certain trusts . . . .").  Stated slightly differently, Congress—presumably as a cost-saving

measure—mandated that participating states cannot disregard certain income and

assets when determining if a person's means are limited enough to qualify for Medicaid.

Most trusts fall in this non-excludable category, with the trust corpus usually

deemed an asset and distributions usually deemed income.  *See id.* § 1396p(d)(3).  But

Congress also created some exceptions. One of those exceptions applies to what are often called "disability trusts" (or "special needs trusts"), defined by statute as follows:

> A trust containing the assets of an individual under age 65 who is disabled (as defined in section 1382c(a)(3) of this title) and which is established for the benefit of such individual by the individual, a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total [Medicaid] assistance paid on behalf of the individual . . . .

*Id.* § 1396p(d)(4)(A). The Court will refer to this as the "Disability Trust Exception." If a trust meets the requirements of the Disability Trust Exception, then the inclusion mandate "shall not apply" when assessing Medicaid eligibility. *Id.* § 1396p(d)(4).

Colorado has implemented this exception by statute, but adds that "termination of the trust during the beneficiary's lifetime" is also an event that will trigger repayment to the state:

> A disability trust is not valid for the purpose of establishing or maintaining a person's resource eligibility for medical assistance unless the trust * * * provides that, upon the death of the beneficiary or termination of the trust during the beneficiary's lifetime, whichever occurs sooner, the department of health care policy and financing receives any amount remaining in the trust up to the total medical assistance paid on behalf of the individual.

Colo. Rev. Stat. § 15-14-412.8(2)(b). The Court will refer to this as the "Colorado Statute."

By regulation, Colorado has elaborated on when a trust might terminate during the beneficiary's lifetime. The regulation specifies that a properly exempt disability trust must, by its terms, terminate before death "if the trust is no longer required for Medical Assistance eligibility":

> The preceding regulations [that would count the trust for

4

eligibility purposes] do not apply to * * * [a] trust that is established solely for the benefit of a disabled individual under the age of 65, which consists of the assets of the individual, and is established for the purpose or with the effect of establishing or maintaining the individual's resource eligibility for Medical Assistance and which * * * terminates upon the death of the individual or if the trust is no longer required for Medical Assistance eligibility in Colorado.

10 Colo. Code Regs. § 2505-10, § 8.100.7.E.6.b.i.e. The Court will refer to this as the "Colorado Regulation" or just the "Regulation."

## III. FACTS

The Court accepts the following as true for purposes of framing its order to show cause.

### A. Mrs. Brockman's Disability Trust

Mrs. Brockman was tragically rendered quadriplegic by an automobile accident in July 2013. (¶¶ 5, 55.)[1] In May 2014, the El Paso County (Colorado) District Court, sitting in probate, "issued an order establishing the Mendy Brockman Disability Trust (hereinafter referred to as the 'Trust')," with Mr. Brockman as trustee. (¶¶ 5, 54.) "This Trust is a special needs trust authorized under federal and state law and created for the sole benefit of Mendy Brockman with the purpose or with the effect of establishing or maintaining her resource eligibility for medical assistance under the Medicaid program." (¶ 18.) The Trust corpus comprised settlement proceeds from Mrs. Brockman's personal injury lawsuit arising from her car accident. (¶¶ 5, 53.)

The Trust is governed by a Declaration of Trust ("Declaration"). (ECF No. 39-5.) The Declaration states that its "sole lifetime beneficiaries" are "Beneficiary [*i.e.*, Mrs.

---

[1] All "¶" citations, without more, are to the Second Amended Complaint (ECF No. 39-4), which is the currently operative complaint.

Brockman] and the Colorado Medicaid Agency [*i.e.*, the Department]." (*Id.* § 8.01.) The Declaration then says that "[t]he trust shall cease and terminate on the death of the Beneficiary or as required by law." (*Id.*) The Declaration goes on to allude to the Colorado Regulation: "Pursuant to Colorado State Medicaid regulations, the Trust is required to terminate if Beneficiary becomes otherwise ineligible for Medicaid benefits in the State of Colorado pursuant to law." (*Id.*) The Colorado Regulation actually says that a disability trust will end "if the trust is *no longer required* for Medical Assistance eligibility in Colorado" (emphasis added), which is not necessarily the same thing as "*becom*[*ing*] . . . *ineligible* for Medicaid benefits in the State of Colorado" (emphasis added). This discrepancy is an important part of why the Court may lack subject matter jurisdiction, as described below. Regardless, the Department reviewed and approved the Declaration before the El Paso County District Court officially entered it. (¶¶ 5–6.)

## B.    Mrs. Brockman's Decision to Disenroll from Medicaid

"Effective January 1, 2019, Mendy Brockman chose to no longer receive Medicaid benefits from the State of Colorado for reasons personal to her." (¶ 7.) By letter dated March 19, 2019, the Department (via Defendant DiRienzo) informed the Brockmans that the Trust "must be closed due to the termination of Medicaid benefits for Mendy Brockman as of 12/31/2018." (ECF No. 49-1 at 1.) As authority, the letter invoked the Declaration, "as well as state and federal regulations, [which] provide that the trust shall terminate upon the death of the individual or if the trust is no longer required for Medicaid eligibility in Colorado." (*Id.*) The letter thus demanded that the Brockmans terminate the trust and remit $422,486.60 "for medical assistance expended on Mrs. Brockman's behalf." (*Id.*) If the Brockmans did not do so within thirty days, the letter warned that "this matter will be turned over to the Colorado Attorney General's

Office to pursue all legal remedies." (*Id.*)

The Brockmans filed this lawsuit on April 19, 2019. (ECF No. 1.) They have not alleged that the Department instituted any proceeding against them, or that it has succeeded in recovering any money from the Trust.

## IV. ANALYSIS

The Brockmans' basic claim is that the Colorado Regulation conflicts with the Disability Trust Exception (and other federal statutes that the Court need not discuss at this time). Therefore, they say, federal law preempts the Colorado Regulation, as required under the Supremacy Clause, U.S. const. art. VI, cl. 2 9 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").

Thus framed, the case raises numerous interesting questions. However, the Court is concerned that both sides of this dispute labor under what may be a significant misimpression about the effect of the Colorado Regulation. More specifically, the parties both assume that the Colorado Regulation, of its own force, causes a disability trust to terminate when that trust is no longer required for Medicaid eligibility. As the Court will explain more thoroughly below, the Court sees nothing in the Regulation (or the Colorado Statute, or the Disability Trust Exception) that has such an effect. This creates a potential ripeness problem, and therefore a question going to subject matter jurisdiction that the Court has a duty to raise *sua sponte. Cf. Niemi v. Lasshofer*, 728 F.3d 1252, 1259 (10th Cir. 2013) ("Though the parties don't address this potential

problem, it's unclear whether we can ignore it.  In our adversarial system we don't usually go looking for trouble but rely instead on the parties to identify the issues we must decide.  At the same time, of course, this court has an affirmative obligation to admit when we or the district court lack the jurisdiction, or power, to hear a case.").

Again, language of the Disability Trust Exception is as follows:

> This subsection [which would otherwise require most trusts to be counted as income and/or assets for Medicaid eligibility purposes] shall not apply to * * * [a] trust containing the assets of an individual under age 65 who is disabled (as defined in section 1382c(a)(3) of this title) and which is established for the benefit of such individual by the individual, a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total [Medicaid] assistance paid on behalf of the individual . . . .

42 U.S.C. § 1396p(d)(4)(A).  This exception says to Medicaid-participating states, in effect, "When you are considering an applicant's eligibility for Medicaid, you must disregard resources contained in a trust established by proper authority for the benefit of an under-65 disabled individual if, by some mechanism, the state will recover from the trust what the state spends on Medicaid assistance, after the disabled individual dies."

What is that recovery-enabling mechanism in Colorado?  It begins with the Colorado Statute.  Again, it reads in relevant part:

> A disability trust is not valid for the purpose of establishing or maintaining a person's resource eligibility for medical assistance unless the trust * * * provides that, upon the death of the beneficiary or termination of the trust during the beneficiary's lifetime, whichever occurs sooner, the department of health care policy and financing receives any amount remaining in the trust up to the total medical assistance paid on behalf of the individual.

Colo. Rev. Stat. § 15-14-412.8(2)(b). In other words, in Colorado, the recovery-enabling mechanism is *the language of the declaration of trust*. Absent language tracking the Colorado Statute, the Department will not ignore the assets in the trust. Thus, the Department recovers *by operation of the declaration of trust*.

Obviously, then, any proper declaration of a disability trust should contain two repayment triggers: "[1] the death of the beneficiary or [2] termination of the trust during the beneficiary's lifetime." As to the second trigger, however, why would the trust terminate during the beneficiary's lifetime? And who would make such a decision?

The Colorado Regulation provides at least one answer. To repeat, it reads in relevant part:

> The preceding regulations [that would count the trust for eligibility purposes] do not apply to * * * [a] trust that is established solely for the benefit of a disabled individual under the age of 65, which consists of the assets of the individual, and is established for the purpose or with the effect of establishing or maintaining the individual's resource eligibility for Medical Assistance and which * * * terminates upon the death of the individual or if the trust is no longer required for Medical Assistance eligibility in Colorado.

10 Colo. Code Regs. § 2505-10, § 8.100.7.E.6.b.i.e. Unlike the Colorado Statute, the Regulation is not framed in terms of what the declaration of trust must "provide[]." Colo. Rev. Stat. § 15-14-412.8(2)(b). Nonetheless, the import of the Regulation is similar: when assessing eligibility for Medicaid, the Department will ignore a disability trust only if it meets certain requirements, among which are that the declaration of trust *says* that the trust will "terminate[] [1] upon the death of the individual or [2] if the trust is no longer required for Medical Assistance eligibility in Colorado."

In short, Colorado does not implement the Disability Trust Exception directly, *i.e.*, through a statute declaring that the state may recover after death. It instead

implements the Disability Trust Exception by requiring a declaration of a disability trust to contain language granting the state a right to reimbursement after death. Colorado then mandates additional language (not required to implement the Disability Trust Exception) giving the state a right to recover upon "termination of the trust during the beneficiary's lifetime" (the Colorado Statute) and specifying that such termination happens automatically "if the trust is no longer required for Medical Assistance eligibility in Colorado" (the Colorado Regulation). Thus, again, it is *the language of the declaration of trust*, and not any statute, that triggers termination of the trust—and termination, in turn, triggers Colorado's rights of recovery.

The Court now turns to the March 19, 2019 letter that Defendant DiRienzo sent to the Brockmans, announcing that they had triggered a termination event (and therefore a repayment obligation) by disenrolling Mrs. Brockman from Medicaid. (ECF No. 49-1.) The letter claims that the Trust "is required to be terminated" because "[t]he Mendy Brockman Disability Trust, as well as state and federal regulations, provide that the trust shall terminate upon the death of the individual or if the trust is no longer required for Medicaid eligibility in Colorado." (*Id.* at 1.) But are any of these statements accurate?

The Court will begin with the claim about federal regulations. The Court is aware of no federal regulation, or even statute, that requires a disability trust to *terminate* upon the death of the individual, much less on some event before death. The only authority of which the Court is aware with any relevance is the Disability Trust Exception, which of course only addresses recovery upon the death of the beneficiary (not any earlier event). More importantly, it says nothing about how the states will actually recover from

the trust after death. It does not even mandate that a Medicaid-participating state have a mechanism by which it can recover after the beneficiary's death. If a state does *not* have such a mechanism, the consequence is that no disability trust in that state can be excluded from Medicaid eligibility determinations, but that is the extent of the coercion that the Disability Trust Exception places upon a state. Thus, there appears to be no federal regulation that has the effect DiRienzo claims in her letter.

What about a state regulation? DiRienzo probably had in mind the Colorado Regulation, because the last clause of the sentence is almost a verbatim quote from the Regulation. She may also have had the Colorado Statute in mind. But these authorities do not say that a disability trust terminates *by operation of law* upon the specified circumstances. They instead prescribe language that a declaration of trust must contain to make that trust excludable when assessing Medicaid eligibility. So neither the Colorado Statute nor the Colorado Regulation are "regulations" stating that "*the trust shall terminate* upon the death of the individual or if the trust is no longer required for Medicaid eligibility in Colorado." (ECF No. 49-1 at 1 (emphasis added).)

Finally, what about the terms of the Declaration (which is what DiRienzo manifestly had in mind by referring to "[t]he Mendy Brockman Disability Trust")? The Declaration says that the Trust will automatically terminate upon any of three conditions:

- "the death of the Beneficiary,"
- "as required by law," and
- "if Beneficiary becomes otherwise ineligible for Medicaid benefits in the State of Colorado pursuant to law."

(ECF No. 39-5 § 8.01.) Obviously the first condition does not apply (Mrs. Brockman is

still living).  And "as required by law" is, as far as the parties have presented to the Court, a cross-reference to nothing.  As noted, the parties have cited no Colorado authority that, of its own force, causes a disability trust to terminate, or declares it terminated, or anything similar.

This leaves the final condition: "if Beneficiary becomes otherwise ineligible for Medicaid benefits in the State of Colorado pursuant to law."  The "otherwise" in this phrase almost certainly refers to the previous two conditions (death and "as required by law"), so the question is how someone becomes "ineligible" for Medicaid benefits "pursuant to law."  Notably, this is not the language that the Colorado Regulation specifies for a proper disability trust, *i.e.*, "the trust is no longer required for Medical Assistance eligibility in Colorado."  10 Colo. Code Regs. § 2505-10, § 8.100.7.E.6.b.i.e. The Declaration does not ask whether Mrs. Brockman needs the trust to maintain Medicaid eligibility, but whether she has "*become*[] otherwise ineligible" (emphasis added).[2]

Has Mrs. Brockman "become[] otherwise ineligible for Medicaid benefits in the State of Colorado pursuant to law"?  No party has argued that she has, and it is not obvious on the face of her complaint either.  "Ineligible" means "not eligible," and "eligible" is most commonly defined as "qualified to participate or be chosen."  *See* Merriam-Webster Online, *at* https://www.merriam-webster.com/dictionary/eligible (last accessed Feb. 11, 2020).  There is no allegation that Mrs. Brockman is no longer qualified to participate in Medicaid, *i.e.*, that she could not be re-approved for Medicaid,

_____

[2] In other words, the Department probably should not have approved the Declaration, given that it did not contain the language required by the Regulation.  But the Department approved, and so the Declaration says what it says—and governs the Department's right to recover.

should she re-apply.

To be sure, if the Trust terminates, then she likely becomes unqualified ("ineligible"). But the question here is *whether* the Trust has terminated, not the effect that termination would have. There is a reasonable basis to believe that the Trust has not terminated because it appears that no statute or regulation declares it terminated, and that none of the Declaration's three internal termination triggers have been satisfied. In other words, the entire premise of the DiRienzo letter may be incorrect.

This is where a question of this Court's subject matter jurisdiction arises. If the Trust has not terminated, the Department has no right to recover. If the Department has no right to recover, then the questions raised in the parties' briefing about preemption and related matters are not ripe. If this Court were to give its opinion on those questions, it would be an advisory opinion and therefore in excess of the Court's Article III jurisdiction. *See Flast*, 392 U.S. at 95 ("no justiciable controversy is presented . . . when the parties are asking for an advisory opinion").

A question of statutory subject matter jurisdiction is also lurking. The real dispute presented here may be in the nature of a contract dispute: whether the Department is validly attempting to exercise its rights under the Declaration. That is a state-law dispute, and this Court's jurisdiction over state-law disputes only extends to such disputes between "citizens of different States," 28 U.S.C. § 1332(a)(1), a condition not present here. This Court has supplemental jurisdiction over state-law causes of action, even between citizens of the same state, if the Court's original jurisdiction is founded on a federal question, *see id.* § 1367(a), but it is not clear that a federal question (such as preemption) can provide original jurisdiction when the question remains unripe until an

allegedly supplemental state-law dispute (the Department's rights under the Declaration) is resolved on the merits.

In this light, the Court must order the parties to show cause why the case should not be dismissed for lack of subject matter jurisdiction.[3]

## V.  CONCLUSION

For the reasons explained above, the parties are each ordered to show cause on or before **February 24, 2020** why this action should not be dismissed for lack of subject matter jurisdiction.  The parties' respective show-cause response briefs shall not exceed 7 pages, as calculated according to WJM Revised Practice Standard III.C.1.

Dated this 13th day of February, 2020.

BY THE COURT:

William J. Martinez
United States District Judge

---

[3] Whether or not the parties eventually satisfy the Court that subject matter jurisdiction exists, the Court notes the following for the parties' future consideration.  Much of their briefing is spent arguing over whether the individual defendants are entitled to qualified immunity.  This is a needless dispute under the circumstances.  "Qualified immunity shields federal and state officials *from money damages* unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (emphasis added).  The Brockmans do not seek money damages.  They only seek declaratory and injunctive relief.  Accordingly, there is no need to explore qualified immunity.  Indeed, it is not clear why the Brockmans are naming anyone as a defendant in his or her individual capacity.  Surely the Brockmans do not want declaratory or injunctive relief to run against a particular defendant *individually*, thus binding only that defendant and leaving everyone else in the Department free to do the things that the Brockmans claim are unlawful.  It appears, rather, that the Brockmans want an injunction against the Department itself, which they may obtain—assuming subject matter jurisdiction—by suing the Department directly or by continuing to sue Defendant Bimestefer in her *official* capacity.  *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (suit against a government official is his or her official capacity is equivalent to a suit against the governmental entity for whom the official works).